1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

# UNITED STATES  DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ROY ADAMS, ROBERT EGGERT,
MICHAEL FERRIS, ED HALL, and ROHIT
SINGH on behalf of themselves and a class of
those similarly situated

                 Plaintiffs,

    v.

INTER-CON SECURITY SYSTEMS, INC.,
c/b/a INTER-CON SECURITY SERVICES,
INC.,

                 Defendant.

_____/

No. C 06-05428 MHP

**MEMORANDUM & ORDER**
**Plaintiffs' Motion for Approval of**
**Hoffmann-La Roche Notice**

On September 5, 2006 plaintiffs Roy Adams ("Adams"), Robert Eggert ("Eggert"), Michael
Ferris ("Ferris"), Ed Hall ("Hall") and Rohit Singh ("Singh") (collectively "plaintiffs") filed this
putative collective action against defendant Inter-Con Security Systems ("Inter-Con") for alleged
violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201 et seq.; California Labor
Code sections 201–204, 226, 510, 1174, 1174.5 and 1194; California Wage Order Number 4 and
California Business and Professions Code section 17200 et seq.  Plaintiffs are current and former
security guards employed by defendant Inter-Con.

      Plaintiffs claim that Inter-Con violates labor laws by regularly requiring employees to work
off-the-clock overtime without proper compensation.  Plaintiffs further allege that Inter-Con illegally
deducts money from employees' wages for uniform deposits.  Now before the court is plaintiffs'
motion for approval of their Hoffmann-La Roche notice.

UNITED STATES DISTRICT COURT
For the Northern District of California

BACKGROUND[1]

Defendant Inter-Con provides security services to private and government clients for hospitals, private businesses and government buildings. Those services are provided by security officers working regular shifts at specific sites. Such services are often provided on a continuous twenty-four-hour basis with security officers working consecutive eight-hour shifts. Inter-Con security officers work as a team by coordinating with fellow officers on the same shift along with officers in the preceding and following shift.

Plaintiff Roy Adams is currently employed by Inter-Con as a security guard at the South San Francisco Kaiser Hospital. Plaintiff Robert Eggert is currently employed by Inter-Con as a security guard at the Santa Rosa Kaiser Hospital. Plaintiff Ed Hall is an Inter-Con security guard working at the Stockton Kaiser Hospital. Plaintiff Michael Ferris was formerly employed by Inter-Con as a security guard from approximately 2003 to March 2006. Plaintiff Rohit Singh is an Inter-Con security guard at the South Sacramento Kaiser Hospital. Declarants Linda Fontenot, Christopher R. Porterfield, Dave Rhodes, Emmanuel Udoh, Norma Ball, Brenis Jacques, Prentiss Johnson, Deborah Morgan, Jason Nichols, Peggy Shelton, Roger Schneider, Marlene Aguilar, Myron Bowles (collectively "security officers") are all current and former security officers of Inter-Con who have submitted declarations in support of plaintiffs' motion. Declarants Gerry Reeves and Josh Duke (collectively "security supervisors") are former Inter-Con supervisors who also submitted declarations in support of plaintiffs' motion. Security officers who provided declarations work or have worked at facilities in California, Illinois and Maryland. See, e.g., Fontenot Dec. ¶ 2; Nichols Dec. ¶ 2; Shelton Dec. ¶ 2. Security supervisors who provided declarations managed officers in California, Maryland, Washington, D.C., and Virginia. See Duke Dec. ¶ 2; Reeves Dec. ¶ 2.

According to the security supervisors and security officers, Inter-Con has a policy of requiring officers to attend pre-shift briefings without being compensated for their time. See, e.g., Duke Dec. ¶¶ 5 & 8; Rhodes Dec. ¶ 4. Plaintiffs claim that the alleged policy was in effect in California, Illinois, Maryland, Washington, D.C., Virginia and possibly other locations. See e.g., Duke Dec. ¶ 2; Fontenot Dec. ¶ 2; Nichols Dec. ¶ 2; Reeves Dec. ¶ 2; Shelton Dec. ¶ 2. The facilities where the policy occurred included various hospitals (Kaiser hospitals, Midway Hospital),

2

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

private businesses and buildings (Midwest Generation power plants; Anandale Office Centers; Indymac Bank; the Archdiocese Headquarters; the MTA; SBC Telephone; South Pasadena, Pasadena, and Alhambra Parking Enforcement; Wells Fargo banks; Peterson Automotive Museum), and government buildings (California Secretary of State building; California Department of Motor Vehicles headquarters; Franchise Tax Board locations). See Duke Dec. ¶ 4; Fontenot Dec. ¶ 2; Johnson Dec. ¶ 3; Nichols Dec. ¶ 2 . Plaintiffs contend that the off-the-clock time requires overtime compensation under federal and California law.

Security officers were informed of the required off-the-clock briefings by Inter-Con representatives when they applied for an Inter-Con position, when they attended orientation or when they began working for Inter-Con. See Duke Dec. ¶ 10; Jacques Dec. ¶ 9; Porterfield Dec. ¶ 9. Supervisors at Inter-Con disciplined security officers who failed to follow the policy for pre-shift briefings in the form of verbal warnings, written warnings, suspension or termination. See Duke Dec. ¶ 13; Reeves Dec. ¶ 9. In addition, security supervisors and security officers contend that there is a company policy of falsifying Daily Activity Reports ("DARs"). See, e.g., Duke Dec. ¶¶ 16–17; Ball Dec. ¶ 5. The Inter-Con policy consists of supervisors' instructing officers to write their scheduled shift start time instead of their actual start time on the document and reprimanding officers who failed to comply. See Duke Dec. ¶ 16–17.

Plaintiffs further allege that they were required to attend pre-employment orientation sessions as a prerequisite of their employment for which they were not compensated. See, e.g., Johnson Dec. ¶ 12; Rhodes Dec. ¶ 11. Finally, plaintiffs claim that Inter-Con requires all security guard employees to pay a two-hundred-and-fifty dollar deposit for their mandatory security guard uniform. See Duke Dec. ¶ 19; Reeves Dec. ¶ 14. This deposit is deducted from plaintiffs' pay checks and held for the duration of their employment with Inter-Con. Id. Plaintiffs allege that the amount of the deposit exceeds the value of the uniform and plaintiffs are not paid interest on the funds held by Inter-Con.

UNITED STATES DISTRICT COURT
For the Northern District of California

LEGAL STANDARD

Employees may bring a collective action under the FLSA on behalf of similarly situated employees. 29 U.S.C. § 216(b)[2]; see also Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.). The court "may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit." Id.; see also Hoffmann-La Roche v. Sperling, 493 U.S. 165 (1989) ("Hoffmann-La Roche II"). Potential plaintiffs may file a written consent with the court to opt in to the suit. 29 U.S.C. § 216(b).[3] Potential plaintiffs who do not opt in are not bound by the judgment and may bring a subsequent private action. Leuthold, 224 F.R.D. at 466 (citing EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1508 n.11 (9th Cir. 1990)).

DISCUSSION

Plaintiffs seek conditional certification of a nationwide collective class of current and former employees of Inter-Con who have worked as security officers for Inter-Con at any time since September 20, 2003 for California class members or December 22, 2003 for non-California class members for plaintiffs' FLSA claims. Plaintiffs request that potential plaintiffs be provided notice and opportunity to join this collective action by filing Consent to Join forms within 120 days of the issuance of the notice. Plaintiffs also ask the court to equitably toll the statute of limitations on their FLSA claims as of September 22, 2006 for California class members or December 22, 2006 for non-California class members, the dates on which plaintiffs requested contact information of potential plaintiffs from Inter-Con and was denied. Rubin Feb. 9, 2007 Dec. ¶ 5–7. Defendant also requests that the court defer ruling on plaintiffs' motion until after defendant has had a chance to respond to plaintiffs' first amended complaint. In the alternative, defendant argues that conditional class certification and approval of notice are inappropriate. The court will address each of the parties' contentions in turn.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    I.      <u>Defendant's Answer to Plaintiffs' FAC</u>

2         Defendant argues that plaintiffs' motion should be deferred until after defendant responds to

3    plaintiffs' first amended complaint ("FAC").  Defendant intends to file a motion to dismiss pursuant

4    to Federal Rule of Civil Procedure 12 on grounds including federal labor law preemption,

5    inappropriate class action allegations and an inappropriate alleged class period.  Defendant argues

6    that the collective action certification and authorization of notice proposed by plaintiffs cannot be

7    evaluated properly until the pleadings are settled. In <u>Ayers v. SGS Control Services, Inc.</u>, an

8    employer also "argued that notice should not be given before dispositive issues concerning the

9    merits were resolved."  No. 03Civ.9078, 2004 WL 2978296, at *1 (S.D.N.Y. Dec. 21, 2004).  The

10    court in <u>Ayers</u> held that the "evaluation of the merits of plaintiffs' claims is unnecessary to

11    determine whether notice is appropriate to the defined similarly situated class." <u>Id.</u> at *6.

12    Regardless, defendant has had the opportunity to respond to the complaint.  Therefore, the court

13    declines to defer the order on this motion.

14

15    II.     <u>Conditional Certification</u>

16         Plaintiffs request a conditional certification of the action as a representative collective action

17    so that notice may be sent to potential plaintiffs.  Plaintiffs allege that there are thousands of

18    individuals similarly situated to plaintiffs in addition to the approximately 383 plaintiffs who have

19    already opted in.

20         The court's determination of whether a collective action is appropriate is discretionary.

21    <u>Leuthold</u>, 224 F.R.D. at 466; <u>see also</u> <u>Lusardi v. Lechner</u>, 855 F.2d 1062, 1074–75 (3rd Cir. 1988).

22    Plaintiffs bear the burden of showing that they and the proposed class are similarly situated for

23    purposes of section 216(b).  29 U.S.C. § 216(b); <u>see also</u> <u>Romero v. Producers Dairy Foods, Inc.</u>,

24    235 F.R.D. 474, 481 (E.D. Cal. 2006).  The term "similarly situated" is not defined under the FLSA

25    and the Ninth Circuit has yet to address the issue.  <u>Id.</u>  District courts have taken three different

26    approaches in interpreting the term "similarly situated" for purposes of section 216(b): "(1) a

27    two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current

28    Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1   version of Rule 23 for 'spurious' class actions." <u>Id.</u>  This court will follow the first approach

2   adopted by the majority of courts, including three circuit courts.  <u>Leuthold</u>, 224 F.R.D. at 467; <u>see,</u>

3   <u>e.g.</u>, <u>Thiessen v. Gen. Elec. Capital Corp.</u>, 267 F.3d 1095, 1102-03 (10th Cir. 2001).[4]

4       The first step under the two-tiered approach considers whether the proposed class should be

5   given notice of the action.  <u>Leuthold</u>, 224 F.R.D. at 467.  This decision is based on the pleadings and

6   affidavits submitted by the parties.  <u>Id.</u>  The court makes this determination under a fairly lenient

7   standard due to the limited amount of evidence before it.  <u>Id.</u>  The usual result is conditional class

8   certification.  <u>Id.</u>  In the second step, the party opposing the certification may move to decertify the

9   class once discovery is complete and the case is ready to be tried.  <u>Id.</u>  If the court finds that the

10  plaintiffs are not similarly situated at that step, "the court may decertify the class and dismiss opt-in

11  plaintiffs without prejudice."  <u>Id.</u>  The court addresses the first tier in this order.

12      Courts have held that conditional certification requires only that "plaintiffs make substantial

13  allegations that the putative class members were subject to a single illegal policy, plan or decision."

14  <u>Id.</u> at 468; <u>see also</u> <u>Sperling v. Hoffmann-La Roche, Inc.</u>, 118 F.R.D. 392, 406 (D.N.J. 1988)

15  ("Hoffmann-La Roche I").  Under this lenient standard, "the plaintiffs must show that there is some

16  factual basis beyond the mere averments in their complaint for the class allegations."  <u>West v.</u>

17  <u>Border Foods, Inc.</u>, No. 05-2525, 2006 WL 1892527, at *2 (D. Minn. July 10, 2006).  The FAC

18  alleges that no security officers were ever paid overtime wages for off-the-clock pre-shift briefings.

19  FAC at 3:9–13 & 5:22–26.  Additionally, the FAC alleges that lead plaintiffs worked more than

20  forty hours per week without overtime pay and claims that their experience is common among

21  members of the proposed class.  FAC at 6:11–13, 18–22.  Plaintiffs provide declarations and exhibits

22  from security officers and security supervisors of Inter-Con to support their allegations.  Defendant

23  argues that the plaintiffs have failed to meet their burden of showing that this action should be

24  conditionally certified.  The court disagrees and finds that the plaintiffs have met their burden,

25  warranting conditional certification of this collective action.

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

A.    Conditional Certification of Off-The-Clock Actions

First, defendant claims that an action for off-the-clock pay violations is not generally suitable for collective action certification and that conditional certification should be denied "where an off-the-clock claim requires significant individual considerations."[5] Ray v. Motel 6 Operating, Ltd. P'ship, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (internal quotation marks omitted).  Defendant cites case law inapplicable to the approach adopted by the court for evaluating conditional certification.[6]

In an analogous context, the court held that individual inquiries would predominate a suit because prospective collective action members worked in eighty different locations.  England v. New Century Fin. Corp., 370 F. Supp. 504, 506 (M.D. La. Apr. 26, 2005).  However, unlike England the policies alleged by plaintiffs are not just instructed verbally by supervisors, but are also described in employee handbooks and job applications.  Evaluating documents for each facility would not result in the heavy burden of finding facts for each individual plaintiff which was feared by the court in England.  Also, the England court's concern of overreaching by conditionally certifying a collective action to locations not proven to be liable is unfounded here.  For conditional certification, plaintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy.  See Allen v. McWane, No. Civ.A.2:06-CV-158, 2006 WL 3246531, at*3 (E.D. Tex. Nov. 7, 2006) ("Although the affidavits and declarations do not encompass all of Defendant's facilities, the Court finds that the Plaintiffs have come forward with competent evidence.").  By requesting conditional certification in order to send notices, plaintiffs are not asking the court to infer a finding of liability at all of Inter-Con's other facilities.  Finally, defendant's concern about the potentially individualized nature of determining damages is irrelevant in considering conditional certification.  The threshold inquiry does not require that the extent of the potential plaintiffs' damages be identical or even similar.  Whether each plaintiff is due a different amount in damages does not affect whether they were "together the victims of a single decision, policy or plan." Thiessen, 267 F.3d at 1102.  Therefore, actions with off-the-clock allegations are suitable for collective action certification.

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2          B.       Individual Nature of Plaintiffs' Claims

3          Second, defendant contends that plaintiffs have failed to meet their burden because the

4   evidence presented by the plaintiffs involve individual and not common issues of fact.  Plaintiffs'

5   proposed class would encompass employees at more than 500 different locations, under more than

6   fifty different contracts and in thirty-six different states according to defendant.  See Merkel Dec. ¶

7   5; Stack Dec. ¶ 5.  Plaintiffs provide declarations addressing only sixteen locations under five

8   contracts in three states.  See Merkel Dec. ¶¶ 6, 7 & 9.  However, defendant overlooks the

9   declarations of the security supervisors which address the allegation in an additional sixty-two

10  locations.  See Duke Dec. ¶ 2 (ten to twelve facilities); Reeves Dec. ¶ 2 (at least fifty facilities).

11         Defendant argues that "a plaintiff must demonstrate that employees outside of the work

12  location for which the plaintiff has provided evidence were similarly affected" by the alleged illegal

13  policy.  Horne v. United Serv. Auto. Ass'n., 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003).

14  However, the court's reasoning in Horne was not that a plaintiff must demonstrate the existence of

15  similarly situated persons at every location in the proposed class.  Rather, the named plaintiff must

16  demonstrate that there existed at least one similarly situated person at a facility other than his own.

17  Id. at 1236 ("[T]he court must at least satisfy itself that there are other persons similarly situated and

18  who desire to opt in to the case.").[7]  Plaintiffs in this case have provided thirteen declarations from

19  officers employed at locations other than their own who have been subject to the same alleged

20  policy.  Additionally, 383 other potential plaintiffs employed in fifty cities under at least six

21  contracts have opted into the action.  Rubin Mar. 5, 2007 Dec. ¶ 3.[8]  Defendant has not provided any

22  evidence to rebut plaintiffs' declarations.  Thus, plaintiffs have sufficiently demonstrated the

23  existence of similarly situated persons.

24         Defendant also points to the fact that the documentation provided by plaintiffs come from

25  only two of its fifty clients, emphasizing that the declarations and opt-in officers cover only some of

26  the locations that defendant serves.  Defendant contends that the limited scope of documents,

27  declarations and existing opt-in plaintiffs are indicative of a lack of a uniform policy of unpaid off-

28  the-clock work nationwide.  However, defendant has refused discovery of documentation with their

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1  other clients, contending that the information is private.  Rubin Mar. 5, 2007 Dec., Exh. B at 26.  In

2  addition, defendant has refused to provide contact information for employees at other facilities.  See

3  Rubin Feb. 9, 2007 Dec., Exhs. M–N.  The evidence that defendant argues is lacking is the very

4  evidence which defendant has refused to produce; therefore, defendant's proposed inferences are

5  unjustified.

6         Finally, defendant asserts that officers at facilities with only a single officer could not

7  possibly be similarly situated since there would be no need for "pass down" time—a pre-shift

8  briefing when an officer relieves another officer and reviews any issues that arose during the

9  previous shift.  However, the only support for this assertion is a statement by Inter-Con's Vice

10 President.  He states that clients who only require a single officer, which consists of more than half

11 of the facilities that Inter-Con serves, are sites where officers do not relieve another officer. See

12 Stack Dec. ¶ 11.  However, plaintiffs have provided a declaration from Rhodes, a security officer at

13 a location where there is not a continuous shift.  Rhodes Dec. ¶ 5.  Rhodes does not relieve another

14 officer but he must arrive early to review a "pass down" book left for him by the night shift security

15 officer or receive calls from a supervisor.  Rhodes Dec. ¶ 5.  The court concludes that plaintiffs'

16 evidence is sufficient.

17        The court finds that the documents supplied by plaintiffs in conjunction with the declarations

18 from the other security officers and security supervisors and plaintiffs' own detailed allegations are

19 sufficient to show an action warranting conditional collective certification.

20

21        C.      Scope of Proposed Collective Class

22        Defendant argues that if conditional certification is granted, certain groups of employees

23 should be excluded from the class.  First, defendant proposes limiting the class to only officers

24 employed under Kaiser contracts in California and Maryland.  Defendant argues that plaintiffs'

25 evidence addresses primarily those facilities.  However, there is no requirement that plaintiffs must

26 provide equal amounts of evidence for every facility.  Rather, conditional certification is appropriate

27 as long as there is some factual evidence beyond plaintiffs' allegations of similarly situated persons.

28 West, 2006 WL 1892527, at *2.  Plaintiffs have provided factual evidence of the implementation of

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1   the alleged policy at facilities other than the Kaiser facilities in California and Maryland.  See, e.g.,

2   Duke Dec. ¶¶ 2 & 4 (Anandale Office Centers, Pasadena Parking Enforcement, the MTA, Indymac

3   Bank, the Archdiocese Headquarters, SBC Telephone, Wells Fargo banks, Peterson Automotive

4   Museum, etc.).  Therefore, this proposed limitation is inappropriate.

5          Defendant also suggests limiting the class to only facilities where plaintiffs have made a

6   showing of the alleged policy, either through documentation, declarations or their allegations.

7   Conditional certification should be considered in light of the limited discovery at this point.  This is

8   especially important considering defendant's refusal to allow discovery of documents to support the

9   existence of a nationwide policy along with defendant's failure to provide documents to refute the

10  allegation of the nationwide policy at this stage.  Therefore, the court will not limit notice solely to

11  facilities mentioned in plaintiffs' submissions at this time.

12         Defendant argues that some officers should be excluded from the collective class.  First,

13  defendant urges the exclusion of employees from Midwest Generation power plants since those

14  employees were compensated with paid lunches.  This argument requires an evaluation of the merits

15  of claims and the court declines to do so at this stage.  Ayers, 2004 WL 2978296, at *6.  The

16  declarants from the Midwest Generation power plants allege unpaid off-the-clock work

17  demonstrating that they are similarly situated.  See, e.g., Nichols Dec.  Thus, officers from Midwest

18  Generation power plants will not be excluded from the conditionally certified class.

19         Defendant also argues that officers at the U.S. State Department facilities and CHP facilities

20  should not be given notice.  Defendant contends that plaintiffs have no factual support that the

21  officers at the U.S. State Department facilities are similarly situated.  Defendant points to the

22  declaration of security supervisor Duke which stated that he believed security officers for the U.S.

23  State Department were paid properly.  See Duke Dec. ¶ 5.  In addition, defendant asserts that

24  security officers under the U.S. State Department contract, as well as officers under a CHP contract,

25  are not similarly situated because they are subject to collective bargaining agreements ("CBA's").

26  CBA's generally cover FLSA claims and provide their own remedies.  Accordingly, officers subject

27  to CBA's are not usually suitable plaintiffs for FLSA actions.  The court finds that the exclusion of

28  officers subject to CBA's from the collective class is justified, so notice will not be provided to such

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1  officers at this time.  The court may consider creating a sub-class for potential plaintiffs who are

2  subject to CBA's that do not cover plaintiffs' FLSA claims should one become a named plaintiff.

3

4  III.    Notice

5          The FLSA requires the court to provide potential plaintiffs "accurate and timely notice

6  concerning the pendency of the collective action, so that they can make informed decisions about

7  whether to participate."  Hoffmann-La Roche II, 493 U.S. at 170.

8

9          A.      Contact Information

10          Plaintiffs request that the court order defendant to submit to them contact information of all

11  potential plaintiffs in the collective action.  Defendant argues that doing so should not be required on

12  the basis that it would violate their employees' privacy rights.  However, the Supreme Court

13  expressly authorized production of this type of information for notice purposes.  See Hoffmann-La

14  Roche II, 493 U.S. at 170 (The "discovery [of names and addresses] was relevant to the subject

15  matter of the action and . . . there were no grounds to limit the discovery under the facts and

16  circumstances of the case.").  Defendant has provided no cognizable grounds for limiting discovery

17  in this case.

18          In the alternative, defendant cites Gerlach, urging that a third-party administrator should

19  distribute the notices, receive the consent forms and advise the parties of any questions or concerns

20  raised by the plaintiffs.  2006 WL 824652 at *4.  Gerlach ordered no such requirement because that

21  issue was not before the court. The court in Gerlach merely required that the notices be returned to a

22  third-party administrator instead of the clerk of the court.  Id. at *4; see also id. at *7 (The court

23  ordered defendants to "produce to Plaintiffs' counsel the names, addresses, alternative addresses,

24  and all telephone numbers, in Microsoft Excel format, of all [class members].").  Thus, the court

25  orders defendant to submit the contact information of potential plaintiffs to plaintiffs' counsel.

26

27

28

11

B.   Form of Notice

The Supreme Court stated in Hoffmann-La Roche II that "in exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality." 493 U.S. at 174.  "To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  Id.  Notice has the "purpose of providing [potential plaintiffs] with a neutral discussion of the nature of, and their rights in, these consolidated actions."  Monroe v. United Air Lines, Inc., 90 F.R.D. 638, 640 (D.C. Ill. 1981).  Defendant argues that the plaintiffs' proposed notice is deficient for lack of neutrality.

Defendant contends that the Description of the Lawsuit section fails to adequately notify potential plaintiffs that individuals who are not required to report early are not similarly situated to the named plaintiffs.  The front page of the notice states that the notice is for a "Fair Labor Standards Act ("FLSA") lawsuit against Inter-Con seeking compensation for pre-shift time worked during pass-down or security briefings."  Pls.' Proposed Order, Exh. A at 1. The Description of the Lawsuit section states that the claim is based on an allegation that security officers had "to report to work at least approximately 15 minutes extra per shift for pass-down or security briefings."  Id. at 2.  The notice goes on to say in the Your Right to Join this Lawsuit section that "if [the potential plaintiffs] fit the definition [in the Description of the Lawsuit section], [they] may choose to join this suit."  Id.  Though the notice does not explicitly state that only those who were subject to the pre-shift policy are similarly situated, these three sections read in conjunction express the same message.  Defendant also argues that the Description of the Lawsuit section should mention that Inter-Con denies and is actively defending against plaintiffs' allegations.  Plaintiffs argue that defendant's proposed addition is obvious and irrelevant and that the merits of plaintiffs' case are not at issue at this stage.  However, a statement that defendant denies violation of the FLSA does not reflect the merits of the case; it is a fact that should be included in the notice to inform the potential plaintiffs.  See Gerlach, 2006 WL 824652 at *4.

Defendant claims that the two sentences regarding the court's neutrality in the Court Authorization section at the very end of the notice is insufficient to set a neutral tone to the notice.  See id. at *4 ("[A] single sentence seemingly tacked onto the end of the notice" affects neutral

12

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    tone.).  The front page of the notice in the Introduction section states that the court has not ruled on

2    the merits of the lawsuit, but this statement should bolded and put at the top of the front page below

3    the court caption.  See Pls.' Proposed Order, Exh. A at 1.  Defendant also contends that the use of a

4    court-captioned page aggravates the lack of neutrality in the notice.  However, notices typically

5    contain a court caption and the bolded statement of neutrality below the caption should make the

6    court's position clear to potential plaintiffs.  However, the court caption should be tightened so that

7    more information can be included on the first page of the notice.

8         Defendant asserts that the Consequences of Joining this Lawsuit section should inform

9    potential plaintiffs that (1) they share in liability for payment of costs if Inter-Con prevails in the suit

10   and (2) given the venue of the lawsuit, they may have to incur expenses associated with traveling to

11   Northern California for discovery or other purposes.  Plaintiffs argue that the first addition proposed

12   by defendant would chill participation, however they do not refute that potential plaintiffs may share

13   in liability for payment of costs if Inter-Con prevails.  See Gjurovich v. Emmanuel's Marketplace,

14   Inc., 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003).  This information should be included to present to

15   potential plaintiffs a "fair statement of their rights."  Monroe, 90 F.R.D. at 640.  However, defendant

16   cites no authority requiring that potential plaintiffs pay their own travel expenses or even travel to

17   California so the second addition is inappropriate.

18        Defendant also argues that the notice should inform potential plaintiffs of their right to

19   choose their own counsel.  Defendant cites to cases with notices that describe an option for potential

20   plaintiffs to select their own counsel, but no cases that describe that option as a right.  See, e.g., King

21   v. ITT Continental Baking Co., No. 84 C 3410, 1986 WL 2628, at *7 (N.D. Ill. Feb. 18, 1986);

22   Allen v. Marshall Field & Co., 93 F.R.D. 438, 449 (D.C. Ill. 1982).  Plaintiffs argue that notices do

23   not need to provide this option to potential plaintiffs but provide no case law in support of their

24   position.  However, in Belcher v. Shoney's Inc., the court approved a notice with similar language as

25   the proposed notice, stating that the named plaintiffs' counsel would represent opt-in plaintiffs.  927

26   F. Supp. 2d 249, 254 (M.D. Tenn. 1996).  There is a good reason why defendant's proposed

27   language should not be included.  Suggesting that a plaintiff may opt in and bring her own lawyer

28   along would lead to confusion, inefficiency and cumbersome proceedings.  If a class member wishes

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  to have her own lawyer, she need not opt in; she can hire her own lawyer and proceed with her own

2  action.  Having a class action with numerous counsel for plaintiffs who by opting in are class

3  members would make the lawsuit unwieldy, if not impracticable.  Thus, the court will not require

4  that the notice include an option for potential plaintiffs to choose their own counsel.

5  Finally, defendant claims that the Further Information section should not instruct potential

6  plaintiffs to communicate their inquiries exclusively to plaintiffs' counsel.  Defendant contends that

7  either the contact information of both parties' counsel be included in the notice or neither.

8  Defendant cites <u>Belcher</u> as an example of a notice that includes the contact information of a

9  defendant's counsel.  <u>Id.</u>  However, defendant cites no case law that requires that such contact

10  information be included.  In addition, there is no reasoning in <u>Belcher</u> explaining why such contact

11  information was included in the notice authorized by that court.  The court declines to require that

12  the notice include the contact information of defendant's counsel.

13  In sum, the notice should be amended in the following ways: (1) The Description of the

14  Lawsuit section should explain that Inter-Con denies any violation of the FLSA; (2) the court

15  caption should be tightened to fit more information on the first page; (3) the statement in the

16  Introduction section regarding the court's neutrality should be moved to the top of the first page

17  below the caption and bolded; and (4) the Consequences of Joining this Lawsuit section should

18  include a statement explaining that potential plaintiffs may share in liability for payment of costs if

19  defendant prevails in this suit.

20

21  C.    Mailing and Posting of Notice

22  Plaintiffs request that the court order both the mailing of notice to potential plaintiffs and the

23  posting of notice at potential plaintiffs' work locations.  Plaintiffs argue that mailing of notice alone

24  is insufficient because Inter-Con's database may have errors and because potential plaintiffs may

25  discard the notice unaware of its significance. Defendant asserts that mailing of notice is sufficient.

26  <u>See</u> <u>Barnett v. Countrywide Credit Indus.</u>, No. CIV.A.3:01-CV-1182-M., 2002 WL 1023161, at *2

27  (N.D. Tex. May 21, 2002) ("[M]ailing the notice to the potential class members, rather than also

28

14

1    posting them at Defendant's offices, is sufficient to provide the potential opt-in plaintiffs with notice

2    of the suit.").

3         "First class mail is ordinarily sufficient to notify class members who have been identified."

4    Romero, 235 F.R.D. at 492–3.  However, "other methods, such as publication, broadcast

5    announcements, or posting to insure that potential class members receive sufficient notice" can also

6    be used.  Id. at 493.  In Romero, the court ordered the posting of notice where there was some risk

7    that the defendant may fail to provide the contact information of all potential plaintiffs, preventing

8    the potential class members from receiving the notice they are entitled.  Id.  As the court noted,

9    several district courts have approved the posting of notice in addition to direct mailing.  Id. (citing

10   Johnson v. Am. Airlines, Inc., 531 F. Supp 957, 961 (N.D. Tex. 1982)).  The court reasoned that

11   posting of notice would be only a small burden and the combination of mailing and posting notices

12   would lead to the "best notice practicable."  Id. (internal quotation marks omitted).

13        Defendant argues that the burden of posting notices would not be small for them.  The

14   defendant in Romero only had ten facilities and 100 employees compared to defendant's 500

15   locations and several thousand employees.  See Romero, 235 F.R.D. at 480.  The court agrees that

16   the defendant's burden may be higher than in Romero, but considering the magnitude of the number

17   of security officers, the risk of failure to provide contact information for all potential plaintiffs is

18   also higher.  Posting notice at every facility would be unmanageable; therefore, the court orders

19   posting of notice only at locations with fifteen or more security officers who are Inter-Con

20   employees.  In addition, notice must be mailed to every officer in the collective class.

21

22        D.    Deadline for Filing Consent to Join

23        Defendant suggests a thirty-day deadline for potential plaintiffs to file consents to join the

24   suit, citing to several cases that required a similar time period.  See, e.g., Johnson, 531 F. Supp. at

25   961 (twenty-one days); Held v. Nat'l R.R. Passenger Corp., 101 F.R.D. 420, 423 (D.D.C. 1984)

26   (thirty days).  Defendant urges the court to select a time period that permits the potential plaintiffs

27   sufficient time to opt in but is also sufficiently limited so that both parties may resume discovery

28   without fear of contacting represented parties.  Thirty days is too short in light of the number of

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   potential plaintiffs.  Plaintiffs propose a 120-day deadline but cite no case law and give no reasoning

2   for why a potential plaintiff needs such a lengthy period to file a form of consent.  The court hereby

3   sets a ninety-day deadline for potential plaintiffs to file consent to join.

4

5         E.      <u>Statute of Limitations</u>

6         Defendant argues that notice should only be sent to security officers employed by Inter-Con

7   up to two years prior to the notice date.  Normally, the statute of limitations for an FLSA violation

8   claim is two years, but if the violation is willful the statute of limitations is extended to three years.

9   <u>See</u> 29 U.S.C. § 255(a).  Willfulness pursuant to section 255(a) can be shown with evidence that the

10  "employer either knew or showed reckless disregard [as to] whether its conduct was prohibited by

11  statute."  <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 134 (1988).  Defendant argues that

12  plaintiffs have provided no evidence that the violations arose out of willful behavior.  Plaintiffs'

13  supporting declarations include claims that Inter-Con's security supervisors instructed officers to

14  work off-the-clock and the officers were not compensated for that time because they were instructed

15  not to report that time in their Daily Activity Reports.  As plaintiffs point out, a reasonable jury

16  could find willfulness based on the evidence they have provided.  However, the court will not make

17  a determination of willfulness at this early stage and declines to limit the scope of notice to officers

18  employed in the last two years.

19

20        F.      <u>Equitable Tolling of Statute of Limitations</u>

21        Under the FLSA, individual plaintiffs in a collective action must file a valid consent to opt in

22  within the applicable statute of limitations.  29 U.S.C § 256(b); <u>Partlow v. Jewish Orphans' Home of</u>

23  <u>S. Cal., Inc.</u>, 645 F.2d 757, 760 (9th Cir. 1981), <u>abrogated on other grounds by</u> <u>Hoffman-La Roche</u>

24  <u>II</u>.  Plaintiffs ask the court to equitably toll the statute of limitations, but the parties dispute whether

25  the statute of limitations should be equitably tolled.  Defendant reads Ninth Circuit precedent as

26  carving out a narrow exception, applying equitable tolling only for attorneys' errors.  <u>Partlow</u>, 645

27  F.2d at 760.  Plaintiffs, however, read the same precedent for the principle that equitable tolling

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   should be extended where diligent plaintiffs are unable to join an action through no fault of their

2   own.  Id.  For the foregoing reasons, the court agrees with plaintiffs' analysis of Partlow.

3          Equitable tolling is extended sparingly and only where claimants exercise diligence in

4   preserving their legal rights.  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (citing

5   Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984)).  There are two general

6   categories of situations warranting equitable tolling: (1) where the plaintiffs actively pursued their

7   legal remedies by filing defective pleadings within the statutory period, and (2) where the

8   defendants' misconduct induces failure to meet the deadline.  Irwin, 498 U.S. at 96.  Prior

9   applications of equitable tolling illustrate that the inquiry should focus on fairness to both parties.

10  See generally id.; Partlow, 645 F.2d at 760–61 (refusing to hold the plaintiffs liable for the actions of

11  their counsel, depriving the plaintiffs of their legal rights due to no fault of their own).

12         Partlow is not interpreted with uniform scope by district courts.  Compare Baldozier v. Am.

13  Family Mut. Ins., 375 F. Supp. 2d 1089, 1093 (D. Colo. 2005) (applying equitable tolling to facts

14  akin to those present here); and Owens v. Bethlehem Mines Corp., 630 F. Supp. 309, 312–13 (S.D.

15  W. Va. 1986) (interpreting Partlow to permit equitably tolling the statute of limitations because of a

16  judicial delay); with Gerlach v. Wells Fargo & Co., No. C 05-0585 CW, 2006 WL 824652 (N.D.

17  Cal. Mar. 28, 2006) (Wilken, J.) (rejecting Owens and reading Partlow narrowly in a context

18  substantially similar to the facts presented here).  In Partlow, this court finds neither express

19  language nor policy justifications for limiting the principle employed to parties harmed by counsels'

20  errors.  See Partlow, 645 F.2d at 760-61.  Moreover, the Supreme Court suggests that equitable

21  tolling is properly applied to cases involving either defendants inducing delayed filings or faultless

22  plaintiffs.  Irwin, 498 U.S. at 96.  The presence of both here makes equitable tolling appropriate.

23         The potential plaintiffs in this case have yet to receive notice of the action due to defendant's

24  refusal to supply potential plaintiffs' contact information to the named plaintiffs.  On one hand,

25  plaintiffs bear no fault for this delay, having sought the information necessary to notify potential

26  plaintiffs of the pending action.  On the other hand, defendant's conduct has necessarily postponed

27  potential plaintiffs' filing of their consents to opt in with the courts.  Under 29 U.S.C. § 216(b),

28  defendant is only required to provide potential plaintiffs' contact information after conditional

17

certification of the collective class.  See Hoffman-La Roche II, 493 U.S. at 170.  Applying equitable tolling to this case does not alter this requirement, but counters the advantage defendants would otherwise gain by withholding potential plaintiffs' contact information until the last possible moment.  Faultless potential plaintiffs should not be deprived of their legal rights on the basis of a defendant's delay, calculated or otherwise.  Because plaintiffs have diligently pursued their legal rights by soliciting information from defendants, and defendant's refusal has delayed that pursuit, equitable tolling is appropriate.

Plaintiffs requested the contact information of potential plaintiffs in California in a letter to defendant dated September 20, 2006.  See Rubin Dec., Exh. M.  Providing thirty days as a reasonable time for defendant to have supplied that information, the statute of limitations for potential plaintiffs in California will be equitably tolled beginning October 20, 2006 until defendant supplies plaintiffs' counsel the contact information of those potential plaintiffs.  The contact information of potential plaintiffs outside of California was requested in a meeting between the parties on December 22, 2006.  Rubin Dec., Exh. N.  Accordingly, the statute of limitations applicable to potential plaintiffs outside of California will be equitably tolled beginning January 21, 2007 until defendant supplies plaintiffs the requisite information.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1)     Plaintiffs' motion to conditionally certify a collective class is GRANTED.

2)     The collective class of potential plaintiffs consists of all current and former employees of Inter-Con who have worked as security officers for Inter-Con at any time since September 20, 2003 for California class members or December 22, 2003 for non-California class members, except for those employed under a collective bargaining agreement.

3)     Defendant must provide to plaintiffs' counsel contact information of potential plaintiffs within thirty (30) days of the date of this order.

18

**UNITED STATES DISTRICT COURT**
For the Northern District of California

4)    Plaintiffs' request to authorize mailing and posting of notice is GRANTED in part and DENIED in part.  Notice must be posted at the facilities employing potential plaintiffs where there are fifteen or more officers.  Notice must be mailed to all potential plaintiffs.

5)    Plaintiffs' request to equitably toll the statute of limitations for this action is GRANTED.  The statute of limitations will be tolled beginning October 20, 2006 for California potential plaintiffs and beginning January 21, 2007 for non-California potential plaintiffs until defendant supplies plaintiffs' counsel with plaintiffs' requested contact information.

6)    Plaintiffs' request to designate a 120-day deadline for potential plaintiffs' filing of Consent to Join forms is GRANTED in part and DENIED in part.  Potential plaintiffs will have ninety (90) days to file their Consent to Join forms.

7)    Plaintiffs' motion to approve their proposed notice is DENIED.  Counsel shall confer and submit an amended proposed notice in compliance with this order within thirty (30) days of the date of this order.


IT IS SO ORDERED.


Dated: April 6, 2007

_____

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. All facts are taken from plaintiffs' complaint and motion unless otherwise noted.

2. "An action to recover . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

3. "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

4. See also Hipp v. Liberty Nat. Life. Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1213–14 (5th Cir. 1995).

5. Defendant cites several cases to argue that actions for off-the-clock pay violations are not generally suitable for collective action certification, but the court finds these cases inapposite or unpersuasive. See West, 2006 WL 1892527 at *9; Cornn v. United Parcel Serv., No. C03-2001 TEH, 2005 WL 2072091 (N.D. Cal. Aug. 26, 2005) (Henderson, J.); England v. New Century Fin. Corp., 370 F. Supp. 504, 509 (M.D. La. Apr. 26, 2005); Basco v. Wal-Mart Stores, Inc., No. Civ. A. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004); Lawrence v. City of Philadelphia, No. 03-CV-4009, 2004 WL 945139, at *2 (E.D. Pa. Apr. 29, 2004). Defendant distinguishes Gerlach v. Wells Fargo & Co. because that case involves misclassification of exempt status and not off-the-clock work. No. C 05-0585 CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006) (Wilken, J.). Though the facts in Gerlach are not exactly analogous, plaintiffs rely on the case solely to support the general principle that the standard under the first tier is a fairly lenient one which is well established law. Pls.' Mot. at 8:27 & 9:1–2; see Leuthold, 224 F.R.D. at 467; Thiessen, 267 F.3d at 1103.

6. Defendant improperly relies on Cornn since the court's reasoning there was based on the standards for certification of a class under Rule 23. Id. In addition, Basco and Ray are inapposite since the courts there relied on factors considered for decertification because they found that the facts before them were extensive, warranting a more stringent analysis. 2004 WL 1497709, at *4; 1996 WL 928231, at *4. The record for this case is insufficient to justify relying on factors normally analyzed in the second tier. See Leuthold, 224 F.R.D. at 467 (At the second tier, "[t]he court . . . must consider the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations.").

7. Horne involved a single plaintiff filing a suit alleging unpaid overtime because his supervisor instructed him to clock out at 5:00 PM every day even though the production goals imposed on him required more than forty hours a week. 279 F. Supp. 2d at 1236. The plaintiff's support for his allegations were documents pertaining to his situation and allegations concerning a specific, former supervisor. Id. Importantly, the plaintiff's current supervisor stated that he never told the plaintiff to clock out at 5:00 PM. Id. The court concluded that plaintiff's evidence could not support a finding of a single other similarly situated persons.

8.  Michael Rubin, attorney for plaintiffs, submitted two declarations.  The first one was submitted in support of plaintiffs' motion on February 9, 2007 ("Rubin Feb. 9, 2007 Dec.").  The second one was submitted in support of plaintiffs' reply on March 7, 2007 ("Rubin Mar. 7, 2007 Dec.").

UNITED STATES DISTRICT COURT
For the Northern District of California